22-1164 Maalouf v. Microsoft Corporation Morning, Your Honors. May it please the Court. In the record, at Appendix 416, Mr. Maalouf, as a pro se litigant, cited to the Board the Supreme Court's Carnegie Steel decision. The Board ignored that citation. But there, the Board warns how simple inventions deserve patents too, especially when present experience makes it seem strange that experts in the field approach so near the consummation of their desires, but fail to take the final step to make the claim combination. The Supreme Court calls this, quote, the common history of important inventions, end quote, their simplicity that precedes their popularity. Mr. Maalouf's inventions are patentable because they are simple in these ways, and the Board erred to find otherwise. The Board's errors are twofold. Counsel, wouldn't you agree that the less technology involved in the case or the device and the less complexity, then the easier it is to find a motivation to combine? Yes, Your Honor, but that just because an invention is simple does not make it obvious. For instance, if you take Edison's light bulb, you add a carbonized thread, two electrodes, and a light bulb in a vacuum, and you have a light bulb. Today, we would call that simple. But back then, you have to look at the perceptions of the art at the time of the invention. If that answers your question, I would like to return. No, yes. The Board errors are twofold. First, drawing conclusions without substantial evidence. Second, stating conclusions without explanation. First, Microsoft admits at page 56 of their response brief that the Board's reason to combine rationale was that ground two and three combinations would expand the commercial application of the prior art handles. Remember, claim 37 involves the sliding adjustability of the holder. Expand the commercial application. But this rationale turns invention completely on its head. The inventor's beneficial result... Why would that not be sufficient motivation to combine? Where just purely by making the changes that don't seem very complex required here in order to combine, you're able to use the device with a whole host of other cameras, different sizes and shapes. And consequently, you have greater commercialization. Why isn't commercialization itself sufficient basis for motivation to combine? It could be, based on the arguments presented. But here, Microsoft's expert did not provide the information that we would need to support that. Microsoft provides perception in the art that actually shows that the marketplace was complacent. The expert shows at paragraph 121, appendix 849 and 850, that the marketplace was completely complacent. The forces were not working towards creating this adjustable holder because it would not be profitable. Why would an accessory builder or creator in this field want to defeat their own business plan? It was marketplace complacency, not marketplace... To make more money. How so, your honor? Because in that scenario, you would only be selling one adjustable holder forever. It would defeat the purpose of every time a new iPhone comes out, selling a new holder, selling a new adjustment. Why would that be a bad thing? You're selling an iPhone that captures the sizes of all cameras that are in the market. And that's exactly what Mr. Maloof created. He discovered how wonderful of a solution that was, created it much probably to the chagrin of accessory builders. These skilled artisans would not want that because it would destroy their own profitability. Every time, and even Mr. Welch, Mr. Microsoft's expert, stated specifically that consumers expected to buy a new holder each time they bought a new iPhone. The board found Mr. Welch to be persuasive, didn't it? Not in those words, your honor. The board admittedly lacked a lot of explanation. If you look through the actual final written decision, you see that they jumped to a lot of conclusions without a lot of the actual buildup. But they had Mr. Welch's fairly detailed, I think, declaration in front of them. And they went through all the arguments on both sides and said, we agree with Microsoft, supported by Mr. Welch. Isn't that enough for our purposes? Admittedly, your honor, I don't think they did that. They went through, they said, this is Microsoft's argument. This is why Mr. Maloof's arguments may be unavailing without explanation. And then they simply stated, Microsoft met its preponderance of the burden. That's all they do. Hadn't they already rejected some of Mr. Maloof's arguments at the institution stage? Yes, your honor, but that was an earlier stage and the arguments were still reserved. He made them again and they didn't provide much explanation then either. So we're still in the dark as to why the board decided the way the board decided. Can't we assume that it agreed with Mr. Welch and it agreed with Microsoft's arguments? That's not how the law works. If you look at, for instance, Cutforth, where the board is explicitly told to articulate their rationale and tell us why they did so, you'll see that in there they didn't provide affirmative responses. Here is the same scenario. They didn't tell us, we agree with Microsoft. They didn't say, we find Microsoft persuading. They didn't say, Mr. Welch's X argument doesn't lead to X. They simply said, we don't agree with you, and they met their burden. That's it. And so if they had had one extra sentence that said, we agree with Microsoft, and therefore it's met its burden, that would be sufficient, that would take away your argument? No, your honor, because if you look at, for instance, cases such as what Microsoft stated, OutDrive, where the board is providing this very detailed, they work through each element. They say, we believe that this leads to that, and that's why it's obvious. We don't have that here. Well, they may do different things in different cases, because they did something in one case and they didn't do quite as much in another case, isn't of itself evidence or isn't dispositive of the sufficiency of what the board did here. So if the board says, if a patent owner lists two pages of what the patent owner argues, and then lists two pages of what the petitioner argues, and say, we agree with the petitioner, petitioner has borne its burden, that's sufficient, right? They don't have to restate it or remake it up or saying it its own. They can just agree or embrace the other one side's versus the other side's arguments, right? That may be sufficient depending on the scenario, but here they didn't even do that. They simply listed, in summary, some of Microsoft's arguments, and then said, Mr. Maloof, or unavailing, and then they didn't even say the word agree. They simply said, met their preponderance. Well, that's what the ultimate conclusion needs to be as to whether or not... The ultimate conclusion isn't we agree with them or we don't agree with them. The ultimate conclusion is the petitioner has borne its burden here. But we don't understand why. If you look at the final written decision, we do not understand how they jump to that conclusion, because they simply summarize and then jump. There's no in between. There's no B between A and C. The inventor's beneficial result should never be used as a reason to combine without contemporaneous perception evidence. If this rationale works, every important invention would be obvious because every valid patent claim has a beneficial result. But this proves inventiveness, not obviousness. Experts in their field approaching so near the consummation but not reaching it, as the Supreme Court once said. The problem with the board's approach was to excuse Microsoft's lack of perception evidence. Mr. Welch's declaration said that was what was wonderful about Mr. Maloof's Claim 37, and from that concluded that it was obvious. But he never said people in the art were perceiving that a modification or combination would expand commercial applications. Just the opposite. His testimony shows industry complacency, with consumers just buying a new holder every time their phone size changed. Council, there were multiple grounds on which the board found the two claims, there were only two claims at issue, found them invalid as obvious. If we agreed with the board as to one of those grounds but not the other, would we still have to affirm? No, Your Honor. If you were to agree with their construction on Claim 29, which is the only issue at debate for appeal for Claim 29, that would only defeat Claim 29. But if you look at their construction there, you'll see that essentially they are rendering an entire clause within our patent meaningless. They're rendering it superfluous. This is the remote control term? Yes, Your Honor. So didn't the board go on to say that even if they adopted your construction, they still would have found that at least Claim 29 was invalid? They did, Your Honor, but not in such specificity. We would argue that they didn't understand the argument. We were arguing that there is two separate capabilities within this claim, and remote control inherently must mean something different than wireless interface module. There's two terms. They must be different things. And so the fact that there's two capabilities and they can be used at separate times but are mentioned in the same claim does not defeat the meaning of the term remote control. The second error was an APA error described in this court's nuvasive and cuts forth decision. Microsoft's briefing never points to any statements. I notice now that I'm infringing upon my rebuttal time, so I would like to reserve. Cuts forth? I think I was on that panel, but that was a non-presidential opinion, was it not? Yes, it was. But there are other ones. Nuvasive, obviously, is presidential. Good morning, Your Honors, and may it please the Court. I'd like to address two points. First, substantial evidence supports the board's finding that Rosenhan, cited in Ground 1, teaches remote control. Second, substantial evidence supports the board's express finding that Petitioner demonstrated a motion to combine the references both in Ground 2, where Rosenhan was combined with Kim, and in Ground 3, where Fromm, Fenton, and Bolton. Can you, just because time is limited, can you get to your friend's argument about the motivation combined reasoning being absent, or at least insufficient? Yes, Your Honor. I would cite there to, first of all, take those separately. For Ground 2, where Rosenhan was combined with Kim, the only element that Kim adds to Rosenhan is directed to Claim 37. And Claim 37 recites that, wherein the holder, during use, and using the sliding member, adjusts to hold mobile phones of various sizes. There, the board found that there was a sufficient motivation to combine Rosenhan and Kim for two reasons. First, Rosenhan itself... So, I would direct you to the board's discussion at Appendix 19 to 20 for the ultimate conclusion. And then, initially, Appendix 18 to 19, where the board set forth, rooted in the evidence, the motivation to combine. Rooted in the evidence is important. This is unlike the cases where a motivation to combine was established in some conclusory way by a board opinion. Here, the board specifically cited passages from Rosenhan, paragraphs 24, 25, at Appendix 899, 48, and 49 at Appendix 901, that really speak to the motivation here. First, Rosenhan provided a specific motivation for using other mount structures. Stated that other mount structures could be used. Second, Rosenhan teaches in paragraphs 48 and 49 that it might be preferable to have a case compatible with different smartphone shapes and sizes. That's that motivation that I believe Judge Reyna was discussing, the commercial application. As well as a specific statement that consumers may not want to have to replace the entire handle and mount every time they purchase a new phone. That's the motivation here that's set forth in the reference itself and was explained by unrebutted testimony from Microsoft's expert. The board cited to that evidence. The board cited to Microsoft's expert's testimony on that. Paragraph 107 at Appendix 842 and paragraphs 114 and 115 at Appendix 846. That provides the substantial evidence that the board relied on in finding that there was a motivation to combine those two references. Does the board ever deal with the so-called market complacency argument which would seem to counter that motivation to combine? It is our position that that argument simply was not raised. The board can only deal, it's an adversarial proceeding. The board can only deal with what those parties in front of it raised. The board was very solicitous of the arguments made by a pro se litigant. Actually reached back in the case of Rosenhan and Kim, looked back to the patent owner preliminary response where the litigant actually was represented by counsel and re-raised on patent owner's behalf those same arguments and addressed them and said that they were directed to features other than those that are cited in the combination of Rosenhan and Kim. As far as the market complacency, that simply was not an argument that was raised and so it wasn't an argument that the board could have addressed in its decision and didn't. There were some arguments that were raised by patent owner related to so-called secondary considerations such as long felt need, etc. Those were raised and those were addressed by the board and are not an issue here on this appeal. But the board, to the extent that arguments were raised by patent owner, specifically addressed those in every case and decisions have held in this court that, for example, I would direct you to Pace, the case cited in our red brief at 47, that it's inappropriate to find fault in the board's limited treatment of arguments where the board's treatment was at least commensurate with the patent owner's presentation of those arguments. Here, the board did everything that it could to address the arguments that were actually raised by patent owner and can't be faulted for not addressing arguments that are being raised here for the first time on appeal. Your Honor, as to substantial evidence, I wanted to... So it is Microsoft's position that substantial evidence supports the motivation to combine for Rosenhan and Kim and also supports the motivation to combine set forth for Fromm, Fenton, and Bolton and I'm happy to separately answer any questions you might have on that. Do we have to reach from Fenton and Bolton if we agree with you on Rosenhan and Kim? No, if grounds one and grounds two are affirmed, there is no reason to reach from Fenton and Bolton, although we do believe substantial evidence would support that as well. The other issue was touched on briefly, claim construction and I think Your Honor raised the point, didn't the board find that under either construction, remote control is taught by Rosenhan? It is our position that that is exactly what the board found and that substantial evidence supports that decision so that claim construction is also not an issue that needs to be raised here. Substantial evidence supports the finding that Rosenhan itself teaches not only wireless connection, which is one claim element, but remote control using that wireless connection, which is a separate claim element. And I would cite there to the appendix 14, where the board said, quote, irrespective of whether the smartphone is connected to the handle or not, as long as the smartphone is in range of the wireless signal, Rosenhan provides remote control of the camera features over the wireless connection. So that's a clear statement. If we did nonetheless reach the claim construction issue, how do you distinguish wireless connection and remote control? So anyone who's of a certain age remembers that there were remote controls that were wired. Wired remote controls. They don't have to be wireless. Remote controls don't have to be wireless. In fact, the patent itself describes both connection through a USB connection and a wireless connection. And then the patent goes on to claim here, we're talking about a wireless connection that must be provided. And then a wherein clause that says, wherein remote control of the camera feature of the mobile device is provided over the wireless connection. Remote control of the camera feature just is understood in the way that one would normally understand remote control. It's not being provided on the device itself. There's a difference between changing the channels on your TV and changing the channels using a remote. It does not rise to the level of a definition of remote control and being somehow unfixed from the phone that is being controlled by the handle. There's simply just no support for the assertion by patent owner below, as the board found, that a non-fixed mode is what remote control means to a skilled artisan. So it is our contention that even were you to undertake de novo review of that claim construction, that the board was correct in finding that remote control is not limited in the way that a patent owner argued it was. In fact, there are claims that were ultimately canceled from the patent that dependent claims, dependent claims, depending from an independent claim that recited remote control, that specifically required that there be a remote control irrespective of whether the phone is fixed or unfixed. That shows that remote control itself does not carry that water with it. Those further dependent claims under the doctrine of claim differentiation show when they wanted to, when patent owner wanted to claim a non-fixed mode, patent owner knew how to do it, and it didn't do so simply by reciting remote control. Also, the body of the claim makes clear that this is a holder for a phone and that during use a number of things happen. One of the things that happen is that the phone is held. Another of the things that happens is that wireless control is provided. Rosenhan does both of those things. So there's simply no support in the record or in the references  of remote control in the way suggested by patent owner. Unless there's other questions, I yield back the rest of my time. Thank you. Thank you, your honors. My friend hit on a few points that we have a disagreement on. It's an admission by Mr. Welch that complacency expectations of consumers. Mr. Welch provided that. Plus the patentee argued against hindsight and the patentee argued against preponderance. All of these are in the record. That he was a pro se litigant that did his best, but didn't hit all the magic words should not defeat his patents. HIALET as well as other case sites would provide this discretion to be less stringent. We don't even think it needs to reach there. If you look at our reply brief from page 21 to page 27, there are numerous examples of where Mr. Maloof reserved these arguments and preserved them for appeal. Secondly, the combination that is presented by Mr. Welch of Rosenham and Kim directly frustrates the purpose of Rosenham. Rosenham was designed to be ergonomic, but Mr. Welch provided this elongated, very large and cumbersome, almost like the prototype of the Hubbard telescope that is heavy and hard to use. That's not what my client designed. That's not what my client created. In order to do that, he removed all these additional elements from Kim. He attached Kim, which was designed specifically for long distance cell photography, to a holder that was specifically designed to be easy to handle, that was specifically designed to be easy to hold and secure. Ergonomic versus long distance. They just don't mesh. Those mental obstacles, a Posita would not overcome those that easily, especially given the marketplace complacency. On top of that, if you look at ground three, a similar scenario happened for Fenton. Fenton was designed specifically for hands-free viewing of content, but Mr. Welch presented it for using your hands in order to take a photo. There's nothing hands-free about a handle. It just doesn't work that way. Both of these grounds defeat the purposes of the arts within them. Can you give me the page site for where Mr. Welch admitted the market complacency point? Yes, your honor. It is on appendix 849 and 850, paragraphs 121 and 122. That's just one example of where he went into it. On top of that, he used statistics from 2015 for an argument based on an invention that was created in 2012. Nothing is matching up to what the board concluded. We would ask that you reverse, but at minimum, remand because we believe a competent board would not be able to find substantial evidence in this record. Thank you, your honor. Thank you.